J-S36021-23

2023 PA Super 254

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| IAN PISARCHUK | : | |
| | : | |
| Appellant | : | No. 647 EDA 2023 |

Appeal from the Judgment of Sentence Entered February 9, 2023
In the Court of Common Pleas of Bucks County Criminal Division at
No(s): CP-09-CR-0004977-2021,
CP-09-CR-0005002-2021

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| IAN PISARCHUK | : | |
| | : | |
| Appellant | : | No. 1165 EDA 2023 |

Appeal from the Judgment of Sentence Entered February 9, 2023
In the Court of Common Pleas of Bucks County Criminal Division at
No(s): CP-09-CR-0005002-2021

BEFORE: BOWES, J., NICHOLS, J., and KING, J.

OPINION BY NICHOLS, J.: **FILED DECEMBER 5, 2023**

Appellant Ian Pisarchuk appeals from the judgments of sentence imposed following his open guilty pleas to sexual abuse of children and related offenses. Appellant challenges the discretionary aspects of his sentences. We affirm.

We adopt the trial court's summary of the facts underlying this matter. *See* Trial Ct. Op., 4/18/23, at 3-7. Briefly, from 2016 through 2021, Appellant used various pseudonyms on the social media application Snapchat to blackmail adult women and minor girls into sending him sexually explicit photographs and videos of themselves. Appellant threatened to post nude photos of the victims online if they did not comply with his demands. Additionally, Appellant also threatened to kill some victims and threatened to rape the sister of one victim. The ages of the minor victims ranged from twelve to seventeen years old. Police found Appellant's messages to the victims as well as photos and videos of the victims depicting them nude or engaging in sexual activities. One of Appellant's adult victims, Lindsey Piccone, disappeared on September 6, 2016, the day after receiving a message from Appellant in which he threatened to ruin her life. Lindsey's body was found on November 1, 2016, and the cause of death was determined to be suicide.

The Commonwealth charged Appellant with two counts of sexual abuse of children (photographing, videotaping, depicting on computer or filming sexual acts), two counts of unlawful contact with a minor, three counts of sexual abuse of children (child pornography), two counts of corruption of minors, ten counts of sexual extortion, eight counts of stalking, two counts of terroristic threats, seven counts of harassment, and three counts of cyber

harassment of a child[1] at Docket No. 4977-2021. The Commonwealth also charged Appellant with two counts of sexual abuse of children— photographing, videotaping, depicting on computer or filming sexual acts, two counts of unlawful contact with a minor, two counts of child pornography, eight counts of sexual extortion, one count of disseminating explicit sexual material to a minor,[2] two counts of corruption of minors, one count of criminal use of a communication facility,[3] five counts of stalking, two counts of terroristic threats, four counts of harassment, and three counts of cyber harassment of a child at Docket No. 5002-2021.

On March 1, 2020, the Commonwealth *nolle prossed* two counts of cyber harassment of a child and one count each of corruption of minors and sexual extortion at Docket No. 4977-2021. N.T. Plea Hr'g, 3/1/22, at 2. Appellant entered open guilty pleas to all of the remaining offenses. ***Id.*** at 48; ***see also*** Written Guilty Plea Colloquy, 3/1/22, at 1-10. The trial court deferred sentencing for the Sexual Offenders Assessment Board (SOAB) to determine whether Appellant was a sexually violent predator (SVP) pursuant to the Sexual Offender Registration and Notification Act[4] (SORNA). N.T. Plea Hr'g,

---

[1] 18 Pa.C.S. §§ 6312(b)(1), 6318(a)(1), 6312(d), 6301(a)(1)(ii), 3133(a)(1), 2709.1(a)(2), 2706(a)(1), 2709(a)(5), and 2709(a.1)(1)(ii), respectively.

[2] 18 Pa.C.S. § 5903(c)(1).

[3] 18 Pa.C.S. § 7512(a).

[4] 42 Pa.C.S. §§ 9799.10-9799.41.

3/1/22, at 47-48. Appellant waived the preparation of a presentence investigation (PSI) report. *Id.* at 51.

The trial court summarized the subsequent procedural history as follows:

On docket number 5002-2021, this court sentenced Appellant to undergo imprisonment in [a] state correctional institution for no less than two (2) years to no more than five (5) years on Count One, sexual abuse of children—photographing, videotaping, depicting on computer or filming sexual acts; to undergo imprisonment in [a] state correctional institution for no less than two (2) years to no more than five (5) years on Count 2, sexual abuse of children—photographing, videotaping, depicting on computer or filming sexual acts; to undergo imprisonment in [a] state correctional institution for no less than two (2) years to no more than five (5) years on Count 7, sexual extortion; to undergo imprisonment in [a] state correctional institution for no less than two (2) years to no more than five (5) years on Count 8, sexual extortion; and to undergo imprisonment in [a] state correctional institution for no less than two (2) years to no more than five (5) years on Count 24, terroristic threats. . . . These sentences were ordered to run consecutively.

On docket number 4977-2021, this court sentenced Appellant to undergo imprisonment in [a] state correctional institution for no less than one (1) year to no more than five (5) years on Count 1, sexual abuse of children—photographing, videotaping, depicting on computer or filming sexual acts; to undergo imprisonment in [a] state correctional institution for no less than one (1) year to no more than five (5) years on Count 2, sexual abuse of children—photographing, videotaping, depicting on computer or filming sexual acts; to undergo imprisonment in [a] state correctional institution for no less than one (1) year to no more than two (2) years on Count 5, child pornography; to undergo imprisonment in [a] state correctional institution for no less than one (1) year to no more than two (2) years on Count 10, sexual extortion; to undergo imprisonment in [a] state correctional institution for no less than one (1) year to no more than two (2) years on Count 14, sexual extortion; to undergo imprisonment in [a] state correctional institution for no less than one (1) year to no more than two (2) years on Count 16, sexual extortion; to undergo imprisonment in [a] state correctional institution for no less than one (1) year to no more than two (2) years on Count 20, stalking;

- 4 -

to undergo imprisonment in [a] state correctional institution for no less than one (1) year to no more than two (2) years on Count 21, stalking; to undergo imprisonment in [a] state correctional institution for no less than one (1) year to no more than two (2) years on Count 22, stalking; and to undergo imprisonment in [a] state correctional institution for no less than one (1) year to no more than two (2) years on Count 28, terroristic threats. [The trial court also imposed ten years of probation on Count 3, unlawful contact with a minor, and Count 4, unlawful contact with a minor, concurrent to each other and consecutive to Appellant's terms of imprisonment. The trial court did not impose any further penalty on the remaining counts.]

Therefore, in the aggregate, Appellant was sentenced to undergo imprisonment in [a] state correctional [institution] for no less than twenty (20) years to no more than fifty-one (51) years followed by ten (10) years of probation. [The trial court also ordered Appellant to register as a Tier II offender under SORNA.]

Trial Ct. Op. at 8-9 (some formatting altered).

Appellant timely filed a post-sentence motion to reconsider sentence, which the trial court denied on February 28, 2023. On March 6, 2023, the trial court determined that Appellant was not an SVP.

Appellant filed a notice of appeal.[5] Both Appellant and the trial court complied with Pa.R.A.P. 1925.

---

[5] Appellant initially filed a single notice of appeal listing both trial court docket numbers in violation of **Commonwealth v. Walker**, 185 A.3d 969 (Pa. 2018) and Pa.R.A.P. 341. However, on April 17, 2023, Appellant filed a "Motion to Remand to File Amended Notices of Appeal." This Court granted Appellant's motion and remanded the matter to the trial court to allow Appellant to file two amened notices of appeal. **See** Order, 4/28/23 (*per curiam*) (citing **Commonwealth v. Young**, 280 A.3d 1049, 1057 (Pa. Super. 2022)). Appellant filed amended notices of appeal, one at each trial court docket number, on May 10, 2023. This Court subsequently consolidated these appeals *sua sponte* pursuant to Pa.R.A.P. 513. **See** Order, 5/16/23 (*per curiam*).

On appeal, Appellant raises the following issue:

Did the trial court abuse its discretion in sentencing Appellant by imposing a manifestly excessive sentence, relying on improper factors, and failing to consider all relevant factors?

Appellant's Brief at 10.

In his sole claim, Appellant challenges the discretionary aspects of his sentence. *Id.* at 14-23. Appellant argues that the trial court abused its discretion by imposing an aggregate sentence that is manifestly excessive, unreasonable, and constitutes too severe a punishment. *Id.* at 22. Appellant contends that the trial court's statements that Appellant "was in need of supervision for 'nearly the balance of his life[,]'" was likely to reoffend after his release from custody, and that Appellant's "outlook for rehabilitation was bleak" lacked any support in the record. *Id.* at 15, 22 (quoting N.T. Sentencing, 2/9/23, at 86-87). Appellant asserts that the expert report[6] of Don Seraydarian, Ph.D., who concluded that Appellant is at a low to moderate risk to reoffend, contradicts the trial court's conclusions. *Id.* at 15, 17-18, 22. Appellant further argues that the trial court failed to consider the

_____

[6] Appellant cites to a report written by Dr. Seraydarian dated January 25, 2023, which is attached to his brief as Exhibit C. That report is not included in the certified record. The Commonwealth has also cited Dr. Seraydarian's January 25, 2023 report in its brief. *See* Commonwealth's Brief at 22-23. Because the accuracy of the January 25, 2023 report attached to Appellant's brief is not in dispute, we may consider it. *See Commonwealth v. Brown*, 52 A.3d 1139, 1145 n.4 (Pa. 2012) (holding that an appellate court can consider a document that only appears in the reproduced record when "the accuracy of the reproduction has not been disputed" (citation omitted)).

"extensive evidence" Appellant presented regarding his rehabilitative needs. *Id.* at 16-18.

Lastly, Appellant argues that the trial court considered improper factors to support its decision to impose sentences in excess of the guideline ranges including the facts of the case, the suicide of Lindsey Piccone, and the victims' states of mind. *Id.* at 18-22. Appellant contends that the seriousness of the offenses was already factored into the sentencing guidelines, and the trial court did not identify facts distinguishable from typical cases to justify its departure from the sentencing guidelines. *Id.* at 20.

"[C]hallenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right." *Commonwealth v. Derry*, 150 A.3d 987, 991 (Pa. Super. 2016) (citations omitted). Before reaching the merits of such claims, we must determine:

> (1) whether the appeal is timely; (2) whether Appellant preserved his issues; (3) whether Appellant's brief includes a [Pa.R.A.P. 2119(f)] concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence; and (4) whether the concise statement raises a substantial question that the sentence is inappropriate under the sentencing code.

*Commonwealth v. Corley*, 31 A.3d 293, 296 (Pa. Super. 2011) (citations omitted).

"To preserve an attack on the discretionary aspects of sentence, an appellant must raise his issues at sentencing or in a post-sentence motion. Issues not presented to the sentencing court are waived and cannot be raised

- 7 -

for the first time on appeal." ***Commonwealth v. Malovich***, 903 A.2d 1247, 1251 (Pa. Super. 2006) (citations omitted); ***see also*** Pa.R.A.P. 302(a).

"The determination of what constitutes a substantial question must be evaluated on a case-by-case basis." ***Commonwealth v. Battles***, 169 A.3d 1086, 1090 (Pa. Super. 2017) (citation omitted). "A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." ***Commonwealth v. Grays***, 167 A.3d 793, 816 (Pa. Super. 2017) (citation omitted).

Here, the record confirms that Appellant preserved his sentencing claims in a post-sentence motion, filed a timely notice of appeal, and included the issues in his Rule 1925(b) statement. Appellant has also included a Rule 2119(f) statement in his brief. Additionally, we conclude that Appellant has raised a substantial question for review. ***See Commonwealth v. Kurtz***, 294 A.3d 509, 535-36 (Pa. Super. 2023) (finding a substantial question for review where the defendant "pair[ed] an excessive sentence claim with an assertion that the [trial] court failed to consider mitigating evidence" (citation omitted)); ***see also Commonwealth v. Pacheco***, 227 A.3d 358, 376 (Pa. Super. 2020) (holding that a claim that trial court considered impermissible factor raises a substantial question). Accordingly, we will review the merits of Appellant's challenge to the discretionary aspects of his sentence.

Our well-settled standard of review is as follows:

Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

Additionally, our review of the discretionary aspects of a sentence is confined by the statutory mandates of 42 Pa.C.S. § 9781(c) and (d). Subsection 9781(c) provides:

The appellate court shall vacate the sentence and remand the case to the sentencing court with instructions if it finds:

(1) the sentencing court purported to sentence within the sentencing guidelines but applied the guidelines erroneously;

(2) the sentencing court sentenced within the sentencing guidelines but the case involves circumstances where the application of the guidelines would be clearly unreasonable; or

(3) the sentencing court sentenced outside the sentencing guidelines and the sentence is unreasonable.

In all other cases the appellate court shall affirm the sentence imposed by the sentencing court.

42 Pa.C.S. § 9781(c).

In reviewing the record, we consider:

(1) The nature and circumstances of the offense and the history and characteristics of the defendant.

(2) The opportunity of the sentencing court to observe the defendant, including any [PSI].

(3) The findings upon which the sentence was based.

(4) The guidelines promulgated by the commission.

- 9 -

42 Pa.C.S. § 9781(d).

*Commonwealth v. Raven*, 97 A.3d 1244, 1253-54 (Pa. Super. 2014) (some citations omitted and some formatting altered).

The balancing of the sentencing factors is the sole province of the sentencing court, which has the opportunity to observe the defendant and all witnesses firsthand. *See Kurtz*, 294 A.3d at 536. In conducting appellate review, this Court "cannot reweigh sentencing factors and impose judgment in place of sentencing court where lower court was fully aware of all mitigating factors[.]" *Id.* (citation omitted).

"When imposing a sentence, the sentencing court must consider the factors set out in 42 Pa.C.S. § 9721(b), [including] the protection of the public, [the] gravity of [the] offense in relation to [the] impact on [the] victim[s] and [the] community, and [the] rehabilitative needs of the defendant." *Commonwealth v. Fullin*, 892 A.2d 843, 847 (Pa. Super. 2006) (citation omitted and formatting altered). Additionally, the trial court "must consider the sentencing guidelines." *Id.* at 848 (citation omitted).[7]

_____

[7] The trial court must apply Sentencing Guidelines in effect at the time of the offense when calculating the defendant's guideline sentence(s). *See, e.g.*, *Commonwealth v. Maneval*, 688 A.2d 1198, 1200 (Pa. Super. 1997). Although not applicable to the instant case, we note that on July 11, 2022, the General Assembly enacted Act No. 75 of 2022, also known as "Lindsey's Law." Lindsey's Law was introduced as a direct response to Lindsey Piccone's suicide. *See* House of Representatives, Co-Sponsorship Mem., H.B. 2271, Oct. 26, 2021. Act 75 amended the sexual extortion statute by directing the Pennsylvania Commission on Sentencing to adopt a sentencing enhancement in the sentencing guidelines when "the complainant attempts suicide resulting
*(Footnote Continued Next Page)*

When assessing the impact that the offense has had on the victim, the trial court may consider the effects the offense has had on the victim's mental health, including attempts to commit suicide. *See, e.g.*, *Commonwealth v. Conte*, 198 A.3d 1169, 1175, 1177-78 (Pa. Super. 2018); *Commonwealth v. Ahmad*, 961 A.2d 884, 889-90 (Pa. Super. 2008).

Additionally, this Court has explained that

> the sentencing court is required to consider the sentence ranges set forth in the sentencing guidelines, but it [is] not bound by the sentencing guidelines. The court may deviate from the recommended guidelines; they are "merely one factor among many that the court must consider in imposing a sentence." A court may depart from the guidelines "if necessary, to fashion a sentence which takes into account the protection of the public, the rehabilitative needs of the defendant, and the gravity of the particular offense as it relates to the impact on the life of the victim and the community." When a court chooses to depart from the guidelines[,] however, it must "demonstrate on the record, as a proper starting point, [its] awareness of the sentencing guidelines." Further, the court must "provide a contemporaneous written statement of the reason or reasons for the deviation from the guidelines." 42 Pa.C.S. § 9721(b).

*Commonwealth v. Sheller*, 961 A.2d 187, 190 (Pa. Super. 2008) (some citations omitted and formatting altered). "The requirement that the court provide a contemporaneous written statement is satisfied when the judge states his [or her] reasons for the sentence on the record and in the

---

in serious bodily injury or dies by suicide, within 90 days of the commission of the offense, as a proximate result of the trauma that the complainant experienced during or following the commission of the offense." 18 Pa.C.S. § 3133(e)(2) (eff. Sept. 9, 2002).

defendant's presence." ***Commonwealth v. Durazo***, 210 A.3d 316, 321 (Pa. Super. 2019) (citations and quotation marks omitted).

"When reviewing a sentence outside of the guidelines, the essential question is whether the sentence imposed was [un]reasonable." ***Id.*** (citations omitted). "A sentence may be found unreasonable if it fails to properly account for" the four statutory factors of Section 9781(d). ***Sheller***, 961 A.2d at 191.

"[I]t is well-established that the imposition of consecutive rather than concurrent sentences lies within the sound discretion of the sentencing court." ***Kurtz***, 294 A.3d at 535 (citation omitted and formatting altered). "Defendants convicted of multiple offenses are not entitled to a 'volume discount' on their aggregate sentence. Further, we will not disturb consecutive sentences unless the aggregate sentence is grossly disparate to the defendant's conduct, or viscerally appears as patently unreasonable." ***Commonwealth v. Bankes***, 286 A.3d 1302, 1310 (Pa. Super. 2022) (citations omitted and formatting altered).

> In its Rule 1925(a) opinion, the trial court explained:
>
> In the case at bar, when imposing sentence, this court considered all relevant factors and determined that a lengthy sentence of incarceration was warranted for several reasons.
>
> First, the facts of this case are horrific. Put simply, Appellant is a predator who hunted down at least fifteen young victims over the course of five years. Appellant preyed upon the victims' youth, naivete, and self-consciousness to blackmail them into sending him explicit photos and videos for his own pleasure. He possessed hundreds of photographs and videos of about 200 different women, many of them young in age.

- 12 -

Appellant stopped at nothing to obtain these pictures and videos: he threatened their jobs, he threatened to rape their family members, and he even threatened to kill some of them. When one victim, Lindsey Piccone, committed suicide, Appellant not only continued with his egregious conduct, but he also used this information to threaten future victims. He even admitted that the extortion itself was sexually gratifying to him, not just the pictures and videos themselves. Appellant was only stopped because one victim came forward. While he personally stated he never intended to act on his threats, the victims had no way of knowing this and were therefore terrorized into compliance. The facts of the case not only shock the conscience of this court, but also plausibly shock the conscience of anyone who reads or knows about this case.

Second, this court considered the impact upon the victims. At the hearing, one victim testified that the time Appellant spent in jail was the first time in many years she felt safe. She explained that Appellant would add her on social media and repeatedly tell her she was "worthless" and that she would "never have a job again." When the victim would block that account, Appellant would just make another account to continue the harassment. For years, she suffered with anxiety and had to seek counseling to cope with the trauma Appellant inflicted; she testified that she does not believe she "will ever feel true peace again." Another victim told this court that she was shocked, scared, and confused; that Appellant targeted her because he knew she was "weak, innocent and broken." She explained that coming forward to report Appellant to police was terrifying, but she knew it was necessary to stop him from traumatizing more young girls.

This court also noted from the recitation of the facts that Appellant's youngest known victim was twelve years old. At a time when she should have been hanging out with friends, learning how to do her make up, and looking forward to turning the "big 13," she was instead being tormented by Appellant and his threats. That victim, as well as all of his other victims, were robbed of their childhoods. Put simply, the impact upon the victims is immeasurable and, in many cases, permanent.

Third, there is clearly a high need to protect both the community and Appellant's victims from his predatory behavior. Appellant's conduct spanned several years and included a large number of victims. Appellant did not stop when he learned of Lindsey Piccone's suicide, *i.e.*, when he learned of the dire consequences

of his actions. Appellant has shown that he will continue to prey upon the young as long as he is able and that he has a high likelihood of reoffending. At the hearing to determine whether Appellant should be classified as a sexually violent predator, Appellant's own expert witness, as well as Appellant in his letters to his family, admitted that Appellant is in need of serious, intense treatment for the rest of his life. As Appellant had never attempted to receive help before, this court finds it hard to believe that Appellant would independently seek such treatment unless being forced to in a state correctional facility.

Fourth, this court considered Appellant's conduct. While Appellant's counsel insisted that Appellant understood the seriousness of his conduct and that was one reason he chose to admit guilt and accept responsibility by entering a plea, that assertion was bellied by Appellant's statement to the victims. "I hope you can move on from here," he said. Anyone who can even slightly appreciate the gravity of Appellant's offenses would know these victims will never be able to move on. Frankly, one victim, an only child, is dead and the others still suffer from the effects of his trauma such as anxiety and depression. The fact that Appellant thought they could just "move on" is not only shocking, but down right appalling to this court. While Appellant has made some personal strides in prison by helping fellow inmates obtain GEDs, this court found that these acts could not possibly compensate for his past conduct.

Finally, this court considered Appellant's sentencing guidelines. While these guidelines are helpful in many cases, this court reasoned that the legislature could not have fathomed a factual basis such as the one in the case at bar in determining said guidelines. If they had, there is no doubt the standard range of Appellant's sentencing guidelines would call for much more than a few months in county prison.

Therefore, this court determined a consecutive, state sentence is imperative to protect the public and to ensure Appellant receives the treatment he so desperately needs. While this court's sentence is admittedly lengthy, it is also clearly necessary. When imposing sentence, this court set forth its reasoning on the record as outline[d] above. Therefore, this court believes it did not abuse its discretion in sentencing Appellant and avers that Appellant's assertions to the contrary are wholly without merit.

- 14 -

Trial Ct. Op. at 13-16 (citations omitted and some formatting altered); **see also** N.T. Sentencing, 2/9/23, at 88 (the trial court stated that "I don't believe the guidelines in this case will meet the needs of the community and your need for rehabilitation. I think your need for rehabilitation is extensive and as Dr. Seraydari[a]n points out, there are several things you have to undergo" as part of Dr. Seraydarian's recommended treatment plan).

Based on our review of the record, we discern no abuse of discretion by the trial court. **See Raven**, 97 A.3d at 1253. Specifically, we disagree with Appellant's assertion that the trial court relied on an improper factor by considering Lindsey Piccone's suicide. The trial court was required to consider the impact of Appellant's offenses on the victims. **See** 42 Pa.C.S. § 9721(b); **Fullin**, 892 A.2d at 847. This Court has recognized that victim impact includes the effects that the offense has had on the victim's mental health including attempts to commit suicide. **See, e.g.**, **Conte**, 198 A.3d at 1175, 1177-78; **Ahmad**, 961 A.2d at 889-90. Therefore, the trial court properly considered Lindsey Piccone's death by suicide when assessing the impact of Appellant's crimes on the victims. **See Conte**, 198 A.3d at 1175, 1177-78; **Ahmad**, 961 A.2d at 889-90; 42 Pa.C.S. § 9721(b). Further, the trial court considered the expert report of Dr. Seraydarian regarding Appellant's rehabilitative needs. **See** N.T. Sentencing, 2/9/23, at 88. Appellant essentially invites this Court to reweigh the evidence regarding his rehabilitative needs, which this Court will not do. **See Kurtz**, 294 A.3d at 536.

Additionally, the trial court did not abuse its discretion in imposing sentences outside the sentencing guidelines. We observe that the trial court explained that it had considered the recommended guideline range, the protection of the public, Appellant's the rehabilitative needs, the gravity of the offenses, and the impact on the life of the victims and the community when departing from the sentencing guidelines. *See* Trial Ct. Op. at 13-15; *see also Sheller*, 961 A.2d at 190-91. Further, we conclude that the trial court did not abuse its discretion in imposing consecutive sentences, based on the prior decisions of this Court which have consistently held that a defendant is not entitled to a "volume discount" at sentencing for committing multiple offenses. *See Bankes*, 286 A.3d at 1310. Most importantly, Appellant entered an open guilty plea to sixty-seven criminal counts involving egregious predatory behavior victimizing multiple young women and underaged girls, the impact of which culminated in the tragic suicide of Lindsey Piccone. Appellant was advised during the plea hearing that there was no negotiated sentence and that based on the gravity of the offenses, he was facing a potential statutory maximum aggregate sentence of 184½ to 369 years of incarceration. *See* N.T. Plea Hr'g, 3/1/22, at 24.

Accordingly, on this record, we have no basis to conclude that the trial court's sentence was unreasonable. *See Durazo*, 210 A.3d at 321; *Sheller*, 961 A.2d at 190-91; 42 Pa.C.S. § 9781(c)(3). For these reasons, Appellant is not entitled to relief.

Judgments of sentence affirmed. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: <u>12/5/2023</u>