J-S04011-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| JONATHAN PERRONE | : | |
| Appellant | : | No. 413 EDA 2024 |

Appeal from the Judgment of Sentence Entered February 7, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0003686-2020

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| JONATHAN PERRONE | : | |
| Appellant | : | No. 414 EDA 2024 |

Appeal from the Judgment of Sentence Entered February 7, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0003687-2020

BEFORE: OLSON, J., STABILE, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY OLSON, J.:                    **FILED APRIL 10, 2025**

In these consolidated appeals, Appellant, Jonathan Perrone, appeals from the February 7, 2022 judgments of sentence entered in the Court of Common Pleas of Philadelphia County at trial court dockets CP-51-0003686-2020 ("Case 3686") and CP-51-CR-0003687-2020

_____

[*] Retired Senior Judge assigned to the Superior Court.

("Case 3687").[1]    In Case 3686, Appellant pleaded guilty to simple assault – attempts or causes bodily injury and recklessly endangering another person ("REAP").[2]    In Case 3687, Appellant pleaded guilty to aggravated assault – attempts or causes bodily injury to a enumerated person in the performance of duty and strangulation – pressure to throat or neck.[3]    The trial court ordered Appellant to serve an aggregated sentence of 4½ to 9 years' incarceration to be followed by 2 years' probation.  We affirm.

The trial court summarized the factual and procedural history as follows:

On September 2, 2020, [Appellant] assaulted his partner, A.B., in front of their 16-year-old daughter, L.P.  When L.P. tried to intervene on her mother's behalf[,] Appellant punched [L.P.] in the face, chased her to her bedroom, and strangled her.  Appellant then chased [L.P.] to the bathroom and struck her in the eye with a shard of wood.  Both L.P. and A.B. had visible injuries as a result of the incident.  L.P. was taken to the hospital, where doctors

---

[1] In a June 28, 2024 *per curiam* order, this Court, upon motion by Appellant, consolidated the appeals filed with this Court at 413 EDA 2024 and 414 EDA 2024.

[2] 18 Pa.C.S.A. §§ 2701(a)(1) and 2705, respectively.  Both criminal offenses constituted second-degree misdemeanors.  N.T., 11/29/21, at 5.

[3] 18 Pa.C.S.A. §§ 2702(a)(3) and 2718(a)(1), respectively.  Both criminal offenses constituted second-degree felonies.  N.T., 11/29/21, at 6.

At Case 3686, Appellant was also charged with possessing instruments of crime.  18 Pa.C.S.A. § 907(a).  At Case 3687, Appellant was also charged with aggravated assault – attempts or caused serious bodily injury, endangering the welfare of children, possessing instruments of crime, and REAP.  18 Pa.C.S.A. §§ 2702(a)(1), 4304(a)(1), 907(a), and 2705, respectively.  In exchange for Appellant pleading guilty to the aforementioned criminal convictions, the Commonwealth agreed to *nolle prose* the remaining criminal charges.

determined she had internal bleeding in her left eye. She suffered some impairment to her vision as a result of her injuries.

On November [2]9, 2021, Appellant entered into a non-negotiated plea before [the trial] court to one count each of simple assault and [REAP in Case 3686] and one count each of aggravated assault and strangulation [in Case 3687]. On February 7, 2022, [the trial] court sentenced Appellant to 3 to 6 years of confinement for strangulation, 1[½] to 3 years of consecutive confinement for aggravated assault, and 2 years of probation for simple assault and REAP, [set] to run consecutive[ly] to confinement[.[4] The] aggregate sentence [was] 4[½] to 9 years of confinement followed by 2 years of probation.

[On February 14, 2022, at Case 3687, Appellant filed a post-sentence motion, asking the trial court to reconsider its sentence.[5] Appellant's post-sentence motion was denied by operation of law on June 14, 2022.[6]]

On December 2, 2022, Appellant filed a *pro se* petition pursuant to the Post Conviction Relief Act ("PCRA")[, 42 Pa.C.S.A. §§ 9542-9546, in Case 3686 and Case 3687.] On September 12, 2023, [the PCRA] court granted Appellant's petition and reinstated his post-sentence motion and [direct appeal] rights *nunc pro tunc* in Case 3686 and Case 3687]. On September 18, 2023, Appellant filed a post-sentence motion [in Case 3686 and Case 3687], which was denied by operation of law on January 8, 2024.

_____

[4] At Case 3686, the trial court sentenced Appellant to 2 years' probation for simple assault and 2 years' probation for REAP. Each term of probation was set to run concurrently to the other, and the term of probation was set to run consecutively to Appellant's term of incarceration.

[5] Appellant did not file a post-sentence motion at Case 3686.

[6] Pennsylvania Rule of Criminal Procedure 720(b)(3)(a) requires a trial court to render a decision on a post-sentence motion within 120 days or to grant a 30-day extension for a decision on the motion. Pa.R.Crim.P. 720(b)(3)(a). If the trial court does not render a decision on the post-sentence motion within the prescribed time, the motion is deemed denied by operation of law. ***Id.***

Trial Court Opinion, 3/20/24, at 1-2 (record citations and extraneous capitalization omitted). This appeal followed.[7]

Appellant raises the following issue for our review: "Whether Appellant's sentence was unduly harsh and excessive?" Appellant's Brief at 7 (extraneous capitalization omitted).

In asserting that his sentence is unduly harsh and excessive, Appellant raises a challenge to the discretionary aspects of his sentences.[8]

> "Challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right." **Commonwealth v. Derry**, 150 A.3d 987, 991 (Pa. Super. 2016) (citations omitted). Before reaching the merits of such claims, we must determine:
>
>> (1) whether the appeal is timely; (2) whether [the] appellant preserved his[, or her,] issues; (3) whether [the] appellant's brief includes a [Pennsylvania Rule of Appellate Procedure] 2119(f) concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence; and (4) whether the concise statement raises a substantial question that the sentence is inappropriate under the sentencing code.

---

[7] Both Appellant and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925.

[8] Appellant agreed to plead guilty to the aforementioned criminal convictions in exchange for the Commonwealth's agreement to *nolle prose* the remaining criminal charges. The parties did not agree to the sentence Appellant could receive. **See** Guilty Plea Colloquy (Case 3686), 11/29/21; **see also** Guilty Plea Colloquy (Case 3687), 11/29/21; N.T., 11/29/21, at 6. As such, where the guilty plea is open and made without an agreement as to sentencing, Appellant is permitted to challenge the discretionary aspects of his sentence. **See Commonwealth v. Brown**, 982 A.2d 1017, 1019 (Pa. Super. 2009), *appeal denied*, 990 A.2d 726 (Pa. 2010).

> ***Commonwealth v. Corley***, 31 A.3d 293, 296 (Pa. Super. 2011) (citations omitted).
>
> "To preserve an attack on the discretionary aspects of sentence, an appellant must raise his [or her] issues at sentencing or in a post-sentence motion. Issues not presented to the [trial] court are waived and cannot be raised for the first time on appeal." ***Commonwealth v. Malovich***, 903 A.2d 1247, 1251 (Pa. Super. 2006) (citations omitted); ***see also*** Pa.R.A.P. 302(a).
>
> "The determination of what constitutes a substantial question must be evaluated on a case-by-case basis." ***Commonwealth v. Battles***, 169 A.3d 1086, 1090 (Pa. Super. 2017) (citation omitted).

***Commonwealth v. Pisarchuk***, 306 A.3d 872, 878 (Pa. Super. 2023) (original brackets and extraneous capitalization omitted), *appeal denied*, 318 A.3d 95 (Pa. 2024); ***see also Commonwealth v. Dempster***, 187 A.3d 266, 272 (Pa. Super. 2018) (*en banc*).

In determining whether a substantial question exists, this Court "cannot look beyond the statement of questions presented and the prefatory Rule 2119(f) statement[.]" ***Commonwealth v. Christine***, 78 A.3d 1, 10 (Pa. Super. 2013), *aff'd*, 125 A.3d 394 (Pa. 2015). The Rule 2119(f) statement "must explain where the sentence falls in relation to the sentencing guidelines, identify what specific provision of the [Sentencing] Code [or] what fundamental norm was violated, and explain how and why the [trial] court violated that particular provision [or fundamental] norm." ***Commonwealth v. Feucht***, 955 A.2d 377, 384 (Pa. Super. 2008), *appeal denied*, 963 A.2d 467 (Pa. 2008). While it is not necessary that the Rule 2119(f) statement "provide elaborate factual and procedural details," the statement must provide

more than "bald assertions or non-specific claims of error [and] must state the way in which the penalty imposed is inappropriate." *Feucht*, 955 A.2d at 384. A substantial question exists when an appellant presents a colorable argument that the sentence imposed is either (1) inconsistent with a specific provision of the Sentencing Code or (2) is "contrary to the fundamental norms which underlie the sentencing process." *Commonwealth v. Mastromarino*, 2 A.3d 581, 585 (Pa. Super. 2010), *appeal denied*, 14 A.3d 825 (Pa. 2011).

Here, Appellant filed timely notices of appeal and properly preserved a challenge to the discretionary aspects of his sentence in post-sentence motions. In his Rule 2119(f) statement, Appellant contends that the trial court "imposed a sentence that was so manifestly excessive as to constitute too severe a punishment and the sentence was an aggravated guideline sentence." Appellant's Brief at 11. Such a claim - the sentence is manifestly excessive and, therefore, constitutes too severe a punishment - raises a substantial question. *Commonwealth v. Mouzon*, 812 A.2d 617, 624 (Pa. 2002); *see also Commonwealth v. Kelly*, 33 A.3d 638, 640 (Pa. Super. 2011); *Commonwealth v. Cartrette*, 83 A.3d 1030, 1038 (Pa. Super. 2013) (*en banc*). Therefore, we proceed to consider the merits of Appellant's discretionary sentencing claim.

In reviewing sentencing matters, we are mindful of our well-settled standard of review.

> Sentencing is a matter vested in the sound discretion of the [trial court], and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of

- 6 -

discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the [trial] court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias[,] or ill[-]will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Garcia-Rivera*, 983 A.2d 777, 780 (Pa. Super. 2009).

Appellant asserts that his sentence was "so manifestly excessive as to constitute too severe a punishment and the sentence was an aggravated guideline sentence." Appellant's Brief at 15. Appellant argues that, based upon his prior record score ("PRS") of 0 and an offense gravity score ("OGS") of 9, the sentencing guidelines called for a standard range sentence of 12 to 24 months' incarceration, plus or minus 12 months for aggravating or mitigating factors.[9] *Id.* at 15. Appellant asserts that, in fashioning its

---

[9] Appellant's argument involving an OGS score of 9 and sentencing guidelines of 12 to 24 months' incarceration, plus or minus 12 months, pertains to the sentence imposed for his conviction of strangulation. *See* 204 Pa. Code §§ 303.15 and 303.16(a). Appellant does not assert parallel claims in connection with the remaining 3 sentences. Therefore, we will only review Appellant's discretionary sentence claim in the context of the sentence imposed for his conviction of strangulation.

We further note that Appellant was **not** originally charged in Case 3687 with aggravated assault under Section 2702(a)(3), which involves an attempt to cause or actually causing bodily injury to, *inter alia*, a police officer or another enumerated person in Section 2702(c) while that person is in the performance of duty. 18 Pa.C.S.A. § 2702(a)(3).

The certified record before us demonstrates that the actions of Appellant that gave rise to the charges of aggravated assault in Case 3687 involved his daughter, who is not one of the enumerated persons in Section 2702(c). *See* Indictment (Case 3687), 11/9/20, at Count 1 and 2 (stating, Appellant is charged with aggravated assault under Section 2702(a)(1), a first-degree felony, because, with the "intent to cause serious bodily, injury to [L.P.,]"

sentence, the trial court failed to provide "adequate reasons for the sentence to be so high" and "not within the [standard range of the sentencing] guidelines" of 12 to 24 months' incarceration. *Id.* at 12. Appellant further contends that the trial court failed to give proper weight to mitigating factors. In particular, Appellant asserts that the trial court failed to properly consider his status as a veteran, his mental health issues, and that he had no criminal record, took responsibility for his actions by pleading guilty, showed remorse, and experienced the passing of his father while he was in custody. *Id.*

_____

Appellant caused serious bodily injury to L.P. (Count 1) and attempted to cause serious bodily injury to L.P. (Count 2)); *see also* N.T., 11/29/21, at 11-12 (setting forth the facts underlying Appellant's aggravated assault charges as actions against his daughter, L.P.). The criminal offense of aggravated assault under Section 2702(a)(1) is graded as a first-degree felony and, depending on whether the charge involves an attempt to cause or actually causes serious bodily injury, the offense is assigned an OGS score of either 10 or 11, respectively. *See* 204 Pa. Code §§ 303.15 and 303.16(a). Aggravated assault under Section 2702(a)(3) is graded as a second-degree felony and is assigned an OGS score of 9. *Id.*

Appellant pleaded guilty to the second-degree felony of aggravated assault (*see* N.T., 11/29/21, at 6) and was sentenced for his conviction of aggravated assault under Section 2702(a)(3), a second-degree felony. It is unclear from the certified record presently before us why Appellant entered a guilty plea to aggravated assault as defined under Section 2702(a)(3), and was sentenced under that provision, because neither the indictment nor the guilty plea colloquy contains assertions showing an assault against, *inter alia*, a police officer. Nonetheless, Appellant benefited from receiving a lesser sentence for aggravated assault graded as a second-degree felony and having an OGS of 9 (*see* 204 Pa. Code §§ 303.15 and 303.16(a)), and his sentence for this offense does not constitute an illegal sentence. Moreover, as discussed *supra*, Appellant does not challenge on appeal the sentence imposed for his conviction of aggravated assault in Case 3687.

The trial court explained the reasons underlying the imposition of its sentence as follows:

[The trial] court gave full weight and consideration to [the] mitigating factors; however, they were outweighed by the aggravating factors in this case. Appellant attacked and strangled his own child for attempting to save her mother from his abuse. Both complainants provided victim impact statements at the time of sentencing. A.B. testified to a history of physical and emotional abuse, noting that[,] in addition to physical injuries[,] she is left with psychological scars. She feels worthless, has trouble sleeping, and lives in fear of Appellant being released from custody because she believes he will kill her. She testified that she has written good-bye letters to her loved ones in anticipation of Appellant killing her. In L.P.'s impact statement, which was read into the record, she described her life as "hell" and stated that she has lived in fear of her father killing her family since she was 6 years old, and has trouble even speaking to men because of the abuse she suffered and witnessed. Based on the victim impact statements, [the trial] court determined that Appellant's crimes have had long-lasting detrimental impacts on the complainants, and that Appellant poses a serious and direct threat to their safety if not incarcerated.

[The trial] court also took into consideration the fact that Appellant repeatedly had contact with the complainants in this case despite court orders [prohibiting such contact]. A stay[-]away order was issued at Appellant's preliminary arraignment on September 6, 2020. On October 27, 2020, Appellant's bail was revoked due to allegations that he violated that order by contacting his children, with the stay[-]away order to remain. At the time of Appellant's plea, [the trial] court released Appellant to house arrest, issued a stay[-]away order, and explicitly informed Appellant not to contact the complainants or his son. At sentencing, A.B. credibly testified that she received a letter from Appellant in January 2022. A copy of the letter was entered into evidence. The envelope has a stamp, but no postmark. Appellant claims that he sent the letter prior to his [guilty] plea on November 29, 2021. Because Appellant was in custody from October 27, 2020[,] until the time of his [guilty] plea, and that over one month passed between his [guilty] plea and when A.B. received the letter, [the trial] court found that claim to be implausible. Moreover, regardless of when the letter was sent, it was in violation of a court order, as multiple

stay[-]away orders were issued in this case. It was therefore not an abuse of discretion for [the trial] court to consider the letter and Appellant's troubling pattern of defying court orders to contact his victims when fashioning Appellant's sentence.

Trial Court Opinion, 3/20/24, at 4-5 (record citations and extraneous capitalization omitted).

A review of the sentencing guidelines reveals that a conviction of strangulation, which has an OGS score of 9 and when coupled with Appellant's PRS of 0, calls for a standard sentencing range of 12 to 24 months' incarceration with an aggravated sentencing range of an additional 12 months' incarceration. 204 Pa. Code §§ 303.15 and 303.16(a). Therefore, when the trial court imposed a minimum sentence of 3 years' incarceration for Appellant's conviction of strangulation, the trial court imposed a sentence within the aggravated range of the sentencing guidelines.

In fashioning a sentence, Section 9721(b) of the Sentencing Code states that,

the [trial] court shall follow the general principle that the sentence imposed should call for total confinement that is consistent with [S]ection 9725 (relating to total confinement) and the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant. The [trial] court shall also consider any guidelines for sentencing and resentencing adopted by the Pennsylvania Commission on Sentencing[.] In every case in which the [trial] court imposes a sentence for a felony or misdemeanor, . . . the [trial] court shall make as a part of the record, and disclose in open court at the time of sentencing, a statement of the reason or reasons for the sentence imposed. In every case where the [trial] court imposes a sentence or resentence outside the guidelines adopted by the Pennsylvania Commission on Sentencing[,] the [trial] court shall provide a

- 10 -

contemporaneous written statement of the reason or reasons for the deviation from the guidelines to the commission, as established under section 2153(a)(14) (relating to powers and duties). Failure to comply shall be grounds for vacating the sentence . . . and [remanding the case for] resentencing [of] the defendant.

42 Pa.C.S.A. § 9721(b); *see also Commonwealth v. Mrozik*, 213 A.3d 273, 278 (Pa. Super. 2019) (stating, "[w]hen [a trial] court imposes an aggravated or mitigated sentence, it shall state the reasons on the record and on the Guideline Sentence Form, a copy of which is electronically transmitted to the Commission on Sentencing in the manner described in § 303.1(e)").

At the sentencing hearing, the trial court indicated that it received and considered a pre-sentence investigation report, and Appellant indicated that he was in agreement with the contents of that report. N.T., 2/7/22, at 5-6. Counsel for Appellant informed the trial court that Appellant was a veteran, he accepted responsibility for his actions, and he was remorseful. *Id.* at 7. Appellant reiterated similar sentiments, stating,

> I understand these charges and how serious they are. And nobody can really punish myself for me hurting my loved ones more then I already punished myself. It caused people that I care about and love. Misery is not the person that I am. And I am very regretful for it. And I'm sorry. I want to make everything better and move on eventually. I want my kids in my life[,] but I want to make sure that I'm right and I don't want to cause them any more harm.

*Id.* at 24 (formatting modified). Counsel also informed the trial court that, while in custody, Appellant's father passed away. *Id.* at 8.

A.B., Appellant's paramour, testified in detail about the horrific physical and emotional abuse Appellant inflicted upon her and the children over the

course of years. *Id.* at 10-14. A.B. explained that, on her birthday two years ago, she laid on the kitchen floor covered in blood and trash while Appellant poured bleach on her and spit in her face before leaving to visit his girlfriend. *Id.* at 10. A.B. described another incident where Appellant hit her in the face with "a huge piece of drywall." *Id.* at 11. A.B. explained that, because of Appellant's abuse, she suffered a spinal fracture and "too many concussions to count," has had stitches in her arm, and was forced to drink toilet bowl cleaner and was sick for several days as a result. *Id.* A.B. described how Appellant's actions affected her both physically and emotionally to the extent that she cannot "smell bleach without remembering [Appellant] pouring it all over [her]." *Id.* A.B. stated that Appellant "beat [her] down in every way, every day for years." *Id.* at 12. A.B. also described how Appellant inflicted abuse on L.P. and their son, calling L.P. "stupid, fat, ugly or frankly stupid c**t and a retard because of [her] speech impediment." *Id.* at 12. A.B. also testified that Appellant called their son names because of his emotional issues. *Id.* A.B. stated she fears, if given the chance, that Appellant will kill her, and she has written "good-bye letters" to family members in anticipation of Appellant killing her. *Id.* at 13.

The Commonwealth, with the trial court's permission, read L.P.'s victim impact statement into the record. *Id.* at 16-19. In the statement, L.P. talked about how she was too embarrassed to leave the house because all of the neighbors could hear Appellant screaming at her and A.B. *Id.* at 17. L.P. stated that she had no freedom, spent her teenage years "locked up in [the]

- 12 -

house," and was left "to clean up all of [Appellant's] temper tantrum mess[es, including] broken glass, broken wall[s], and broken everything." *Id.* L.P. described how, as a result of Appellant's abuse, she struggles with talking to, and relating to, her boyfriend and other male figures. *Id.* at 18. L.P. described her life with Appellant as "hell." *Id.* She stated that "I've been scared of [him] coming home[,] and I've been scared of coming home to everyone dead since I was like six years old." *Id.* at 18.

The Commonwealth reminded the trial court that, while released on bail prior to the entry of his guilty plea, Appellant's bail was revoked because he threatened his family, and in particular L.P., and called his son "a rat" for calling the police after the trial court ordered Appellant ordered to stay away. *Id.* at 19. The Commonwealth also admitted into evidence documentation demonstrating that after Appellant was ordered to have no contact with the victims, he sent A.B. a letter "talking about how it was [her] fault that he wasn't out on house arrest." *Id.* at 15.

The trial court, in fashioning its sentences, explained the reason for sentencing Appellant within the aggravated range of the sentencing guidelines as follows:

> I've listened to the arguments of counsel. I've taken into consideration the [PRS], the [OGS], the guidelines for those matters, the pre[-]sentence investigation [report], all of that investigation, the arguments from counsel, the victim impact statements[,] and the letter received in January [2022]. I'm going to sentence you, sir, to an aggravated guideline sentence due to the fact that you continued to have contact [with the victims] and due to the victim impact statements.

*Id.* at 25 (formatting modified).

The trial court explained it reasons on the record for sentencing Appellant within the aggravated range of the sentencing guidelines. In fashioning its sentence, the trial court took into consideration the information presented at the sentencing hearing, including Appellant's mitigating factors, *i.e.*, veteran status, mental health issues, responsibility, and remorse, as well as the victim impact statements which details a history of extensive and severe physical and emotional abuse inflicted by Appellant on the victims. As such, we discern no abuse of discretion or error of law in the trial court's judgment of sentence imposed on Appellant for his conviction of strangulation.

Judgments of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 4/10/2025