J-S30004-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| AYDEN Q. HARRIS | : | |
| | : | |
| Appellant | : | No. 227 EDA 2025 |

Appeal from the Judgment of Sentence Entered November 22, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0003667-2024

BEFORE:   OLSON, J., MURRAY, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY OLSON, J.:                    **FILED OCTOBER 7, 2025**

Appellant, Ayden Q. Harris, appeals from the judgment of sentence entered on November 22, 2024, following his guilty plea convictions for third-degree murder, two counts of firearms not to be carried without a license, and tampering with physical evidence.[1]  We affirm.

The trial court summarized the facts of this case as follows:

On September 26, 2024, [Appellant], admitted to shooting and killing twenty-year-old Yasmine Ramos Espinal with a 9mm handgun in the early morning hours of August 25, 2023. [Appellant] met the decedent earlier that month through the dating app, *Monkey*.  At approximately 1:00 a.m. on the night of the incident, after briefly messaging with each other, [Appellant] arranged for the decedent to be picked up from her home by an Uber driver and dropped off at his friend's apartment at 7441 Limekiln Pike in Philadelphia, where he was present and residing at the time. [Appellant's] friend, the actual tenant of the

---

[*]  Retired Senior Judge assigned to the Superior Court.

[1]  18 Pa.C.S.A. §§ 2502(C), 6106(A)(1), and 4910(1), respectively.

apartment, was present and asleep in his bedroom when the decedent arrived.

At some point, while the decedent was seated on the couch in the living room, [Appellant] shot her once in the back of the head, killing her. He then dragged her body from the couch to the ground, smearing her blood on the carpet. When [Appellant's] friend came out of his bedroom, he observed [Appellant] moving the decedent's body and confronted [Appellant]. [Appellant] stated that the decedent shot herself, grabbed the decedent's cell phone, quickly packed away his handgun and his belongings into a backpack, and fled the scene with the backpack. [Appellant] was seen on surveillance video as he left the apartment covering his head and neck with a black towel. He then ordered himself a different Uber ride and was taken to the Kensington area of the city.

Since the decedent had left her wallet at home and [Appellant] took her cell phone, the police who arrived at the scene were unable to immediately identify the decedent. Given [Appellant's] statement to his friend that the decedent had shot herself, police delayed ruling the incident a homicide, investigating the possibility of a suicide. The decedent had no gunshot residue on her hands, no stippling on her head, and, given the trajectory of the bullet, the cause of death was finally determined to be a homicide.

[Appellant] was apprehended by Cheltenham police on January 1, 2024, in possession of a 9mm handgun, which [Appellant] admitted was the same gun used to kill the decedent. [Appellant] initially told detectives that he and the decedent were taking pictures with the gun when he accidentally shot her in the head and denied that they had any fights or arguments.

Neighbors later reported on the night of the incident, they could hear the sounds of fighting and a woman yelling coming from the apartment. [Appellant] admitted to police that he took the decedent's phone and threw it away once he left the apartment. At the time of the incident, [Appellant] did not have a valid license to carry a firearm.

Trial Court Opinion, 3/3/2025, at 2-3 (record citations omitted).

On September 26, 2024, Appellant pled guilty to third-degree murder, firearms not to be carried without a license, and tampering with evidence, but

sentencing was deferred pending a presentence investigation report (PSI report) and mental health evaluation. *Id.* at 1. On November 29, 2024, the trial court sentenced Appellant to 20 to 40 years of imprisonment for third-degree murder with a concurrent one to two years of imprisonment for carrying a firearm without a license. *Id.* No further penalty was imposed for tampering with evidence. *Id.* This timely appeal followed.[2]

On appeal, Appellant presents one issue for our review:

> Whether the sentencing court abused its discretion and erred in ordering a sentence for third-degree murder [of] 20 to 40 years' incarceration and for [carrying a firearm without a license] to 1 to 2 years' incarceration, concurrent[ly], for a total sentence of 20 to 40 years' incarceration, that was at the top of the sentencing guidelines, when substantial mitigating circumstances existed, including, Appellant's age, zero (0) prior record score, his solid family and religious support, his acceptance of responsibility, his remorsefulness, his significant history of drug abuse and Appellant's rehabilitative needs at time of sentencing?

Appellant's Brief at 10 (extraneous capitalization and parentheticals omitted).

In his sole issue presented, Appellant argues that his "aggregate sentence of 20 to 40 years" is "manifestly excessive" and "inflicts too severe a sentence." *Id.* at 19. Further, he asserts that the sentencing court "abused its discretion in failing to adequately consider the mitigating factors regarding Appellant's age, acceptance of responsibility, remorse, his drug abuse history,

_____

[2] On November 29, 2024, Appellant filed a timely post-sentence motion, which the trial court denied on January 7, 2025. On January 12, 2025, Appellant filed a timely notice of appeal to the Superior Court. On February 1, 2025, Appellant filed a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b). The trial court filed an opinion pursuant to Pa.R.A.P. 1925(a) on March 3, 2025.

absence of adult criminal convictions, solid family support, religious support from his spiritual pastor and his rehabilitative needs at the time of sentencing." *Id.* Appellant contends that his sentence was "grossly disproportionate" to his crime. *Id.* Appellant, therefore, requests that "this Court should grant review of the discretionary aspects of Appellant's sentence and remand this matter for resentencing." *Id.* at 23.

Appellant's claim challenges the discretionary aspects of his sentence. *See Commonwealth v. Lee*, 876 A.2d 408 (Pa. Super. 2005) (claim that the trial court erred in imposing an excessive sentence is a challenge to the discretionary aspects of a sentence). With respect to our standard of review, we have held that "sentencing is a matter vested in the sound discretion of the sentencing judge, whose judgment will not be disturbed absent an abuse of discretion." *Commonwealth v. Ritchey*, 779 A.2d 1183, 1185 (Pa. Super. 2001). Moreover, pursuant to statute, Appellant does not have an automatic right to appeal the discretionary aspects of his sentence. *See* 42 Pa.C.S.A. § 9781(b). Instead, Appellant must petition this Court for permission to appeal the discretionary aspects of his sentence. *Id.*

This Court has previously explained:

It is well-settled that "the right to appeal a discretionary aspect of sentence is not absolute." *Commonwealth v. Dunphy*, 20 A.3d 1215, 1220 (Pa. Super. 2011). Rather, where an appellant challenges the discretionary aspects of a sentence, we should regard his [, or her,] appeal as a petition for allowance of appeal. *Commonwealth v. W.H.M.*, 932 A.2d 155, 162 (Pa. Super. 2007). As we stated in *Commonwealth v. Moury*, 992 A.2d 162 (Pa. Super. 2010):

An appellant challenging the discretionary aspects of his [, or her,] sentence must invoke this Court's jurisdiction by satisfying a four-part test:

We conduct a four-part analysis to determine: (1) whether appellant [ ] filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, [*see*] Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

[*Moury*, 992 A.2d] at 170 [(citation omitted)]. We evaluate on a case-by-case basis whether a particular issue constitutes a substantial question about the appropriateness of sentence. *Commonwealth v. Kenner*, 784 A.2d 808, 811 (Pa. Super. 2001).

*Commonwealth v. Hill*, 210 A.3d 1104, 1116 (Pa. Super. 2019) (original brackets omitted).

Here, Appellant complied with the first three requirements as set forth above. Appellant also raises a substantial question. This Court previously determined that "an excessive sentence claim – in conjunction with an assertion that the court failed to consider mitigating factors – raises a substantial question." *Commonwealth v. Swope*, 123 A.3d 333, 339 (Pa. Super. 2015), *citing* *Commonwealth v. Raven*, 97 A.3d 1244, 1253 (Pa. Super. 2014); *see also Commonwealth v. Caldwell*, 117 A.3d 763, 770 (Pa. Super. 2015) (*en banc*) (same). As such, we will review Appellant's sentencing claim.

We adhere to the following standards:

Sentencing is a matter vested in the sound discretion of the sentencing judge. The standard employed when reviewing the discretionary aspects of sentencing is very narrow. We may reverse only if the sentencing court abused its discretion or committed an error of law. A sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision. We must accord the sentencing court's decision great weight because it was in the best position to review the defendant's character, defiance or indifference, and the overall effect and nature of the crime.

*Commonwealth v. Cook*, 941 A.2d 7, 11–12 (Pa. Super. 2007) (internal

citations and quotations omitted).

Pursuant to statute,

the court shall follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant.... In every case in which the court imposes a sentence for a felony or misdemeanor ... the court shall make as a part of the record, and disclose in open court at the time of sentencing, a statement of the reason or reasons for the sentence imposed.

42 Pa.C.S.A. § 9721(b).

Moreover, we have held:

[i]n imposing sentence, the trial court is required to consider the particular circumstances of the offense and the character of the defendant. The trial court should refer to the defendant's prior criminal record, age, personal characteristics, and potential for rehabilitation.

*Commonwealth v. Fowler*, 893 A.2d 758, 767-768 (Pa. Super. 2006)

(internal citation omitted).

- 6 -

Furthermore, where the trial court has the benefit of a PSI report, we

> presume that the sentencing judge was aware of relevant
> information regarding the defendant's character and weighed
> those considerations along with mitigating statutory factors. A
> pre-sentence report constitutes the record and speaks for itself.
> In order to dispel any lingering doubt as to our intention of
> engaging in an effort of legal purification, we state clearly that
> sentencers are under no compulsion to employ checklists or any
> extended or systematic definitions of their punishment procedure.
> Having been fully informed by the pre-sentence report, the
> sentencing court's discretion should not be disturbed. This is
> particularly true, we repeat, in those circumstances where it can
> be demonstrated that the judge had any degree of awareness of
> the sentencing considerations, and there we will presume also that
> the weighing process took place in a meaningful fashion. It would
> be foolish, indeed, to take the position that if a court is in
> possession of the facts, it will fail to apply them to the case at
> hand.

***Commonwealth. v. Alameda***, 339 A.3d 504, 513 (Pa. Super. 2025).

Finally, we have previously determined that "[d]efendants convicted of multiple offenses are not entitled to a 'volume discount' on their aggregate sentence." ***Commonwealth v. Pisarchuk***, 306 A.3d 872, 881 (Pa. Super. 2023) (citation omitted).

Upon our review of applicable law and the sentencing transcript in this matter, we discern no trial court abuse of discretion. Initially, we note that the trial court had the benefit of a PSI report, and we presume it was aware of mitigating factors. The trial court was also aware of Appellant's prior record score of zero, the offense gravity score for third-degree murder with a deadly weapon enhancement, and the sentencing guidelines. Trial Court Opinion, 3/3/2025 at 5. The trial court imposed a standard-range sentence of 20 to

40 years of incarceration for third-degree murder and a standard-range sentence of one to two years of incarceration for carrying a firearm without a license. *Id.* The trial court imposed those sentences concurrently to each other. *Id.* Moreover, prior to sentencing, the trial court heard victim impact testimony from several family members of the decedent. *Id.* at 6.

The trial court considered Appellant's "dangerousness, which was not fully portrayed in his prior record score." *Id.* The trial court pointed out that Appellant was "arrested in Philadelphia on August 12, 2021, after he was pulled over during a traffic stop and police officers observed a firearm under his seat." *Id.* "[Appellant] attempted to flee and threw the gun out of the car window." *Id.* "[Appellant] pled guilty on April 30, 2024, to carrying a firearm on the streets of Philadelphia." *Id.* (capitalization omitted). At that time, "[Appellant] also pled guilty to unauthorized use of a motor vehicle stemming from an August 16, 2022, arrest, in which he was driving a Nissan Rogue which had been stolen at gunpoint on March 2, 2022." *Id.*

At Appellant's sentencing hearing, the trial court went into great detail when devising Appellant's individualized sentence. The trial court considered Appellant's childhood where he was raised in a two-parent home, in which he had a good relationship with his parents, and where his material and emotional needs were met. N.T., 11/22/2024, at 14-15. The trial court also considered Appellant's education, living situation after the age of 18, and his sources of income. *Id.* at 15. The trial court also heard that Appellant suffered from ADHD and depression. *Id.* at 16. The trial court additionally considered a

doctor evaluation stating that Appellant's substance abuse treatment would not interfere with sentencing. *Id.* at 17. The trial court also considered Appellant's remorsefulness and the support of his family and church pastor. *Id.* During sentencing, however, the trial court noted that Appellant lied about the cause of decedent's death, ran, and hid. *Id.* at 57 ("[Appellant's] sentence would be…at lot different today if [Appellant] hadn't done those things.").

Accordingly, we conclude that the trial court placed its reasons on the record for the sentence imposed, after considering "the relevant factors, including the sentencing guidelines, the protection of the public, the gravity of the offences as they relate to the impact on the victim, her family, and the community, as well as [Appellant's] age, family support, school record, drug abuse, the fact that [Appellant] accepted responsibility by pleading guilty, and his potential for rehabilitation." Trial Court Opinion, 3/3/2025, at 5-6. (citations omitted). The trial court advised that "after weighing all the relevant factors, this court arrived at a well-reasoned and just sentence." *Id.* at 7. The trial court concluded that "[a]ny less of a sentence would denigrate the seriousness of the offenses, the pain and suffering experienced by the victim's family, and the danger [Appellant] poses to the public." *Id.* We agree with the trial court's assessment and discern no abuse of discretion in sentencing Appellant. For all the foregoing reasons, Appellant is not entitled to relief on his sole appellate claim.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: <u>10/7/2025</u>