J-S06027-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| TERRY NEWTON | : | |
| | : | |
| Appellant | : | No. 957 WDA 2024 |

Appeal from the Judgment of Sentence Entered July 1, 2024
In the Court of Common Pleas of Westmoreland County Criminal Division
at No(s):  CP-65-CR-0000094-2023

BEFORE:  PANELLA, P.J.E., LANE, J., and BENDER, P.J.E.

MEMORANDUM BY LANE, J.:                    **FILED: May 1, 2025**

Terry Newton ("Newton") appeals from the judgment of sentence imposed following his guilty plea to voluntary manslaughter and possession of a firearm by a minor.[1]  After careful review, we affirm.

A detailed recitation of the underlying facts is not necessary for disposition of the instant appeal.  Briefly, we note that the Commonwealth charged Newton with *inter alia*, criminal homicide and possession of a firearm by a minor after he shot his sixteen-year-old friend ("the decedent") in the stomach while they were playing video games in Newton's bedroom.  **See** Trial Court Opinion, 7/22/24, at 1.  Newton fled the scene after shooting the decedent.  **See id**.  "Video surveillance showed [the decedent] exiting [Newton's] residence holding his abdomen.  He was subsequently located on a porch and taken to the hospital where he died due to his injuries."  **Id**.

---

[1] **See** 18 Pa.C.S.A. §§ 2503(b), 6110.1(a).

On April 15, 2024, the Commonwealth amended Newton's charges to include voluntary manslaughter. Newton then entered an open guilty plea to voluntary manslaughter and possession of a firearm by a minor after signing a guilty plea petition form. **See** Guilty Plea Petition, 4/15/24, at 2. He agreed that the trial court could impose any term up to the statutory maximum of twenty-five years. **See id**. In exchange for his plea, the Commonwealth withdrew the remaining charges. The trial court scheduled a sentencing hearing and ordered a pre-sentence investigation ("PSI") report.

On July 1, 2024, Newton appeared before the trial court for sentencing. At the time of sentencing, the offense gravity score ("OGS") for voluntary manslaughter was eleven, three for possession of a firearm by a minor, and Newton's prior record score ("PRS") was one. **See** N.T., 7/22/24, at 54; **see also** 204 Pa.Code § 303.15. The standard guideline range for voluntary manslaughter with a deadly weapon enhancement — used, based on the OGS and Newton's PRS, was sixty to seventy-eight months, plus or minus twelve months for aggravating or mitigating circumstances; and restorative sanctions ("RS") to six months for possession of a firearm by a minor, plus or minus three months for aggravating or mitigating circumstances. **See** Trial Court Opinion, 7/22/24, at 2 n.1; **see also** 18 Pa.C.S.A. §§ 2503(b), 6110.1(a); 204 Pa. Code §§ 303.16(a), 303.17(b).

During the hearing, the Commonwealth and Newton presented testimony from multiple witnesses. Specifically, the Commonwealth presented victim impact testimony from the decedent's mother, two aunts,

- 2 -

and grandmother. Newton presented testimony from his mother, aunt, grandmother, two brothers, a friend, and a family friend.

The trial court thereafter heard from Newton, who spoke on his own behalf, and arguments from counsel. The Commonwealth argued that Newton's crime had a significant impact on the decedent's family and asked the trial court to consider his criminal history and the circumstances of the case, which included Newton's "consciousness of guilt" as demonstrated by his flight from the scene and concealing the gun he used to shoot the decedent. N.T., 7/1/24, at 47-48. The Commonwealth requested the maximum possible sentence followed by consecutive probation. *See id*. at 48. Defense counsel requested a lower-end standard-range sentence, citing Newton's: (1) age of sixteen at the time of the offense; (2) his difficult family history; (3) mental health issues; (4) the impact of the crime on Newton; and (5) prior record score of one. *See id*. at 49-55.

At the conclusion of the sentencing hearing, the trial court sentenced Newton to an aggravated range term of seven and one-half to twenty years' imprisonment for voluntary manslaughter, followed by a consecutive aggravated range term of six months to five years' imprisonment for possession of a firearm by a minor. Newton's total aggregate sentence was eight to twenty-five years' imprisonment with credit for time served, and other conditions, including treatment. Newton filed a timely motion to modify sentence, which the trial court denied. Newton subsequently filed a timely

notice of appeal, and both he and the trial court complied with Pa.R.A.P. 1925(b).

Newton raises the following issue for our review: "Whether the [trial court] abused its discretion by justifying an excessive aggravated range and consecutive sentences based on so-called 'aggravating factors' that were already contemplated by the sentencing guidelines and discounting any mitigating factors for a child offender?" Newton's Brief at 2.

Newton's issue presents a challenge to the discretionary aspects of his sentence,[2] from which there is no automatic right to appeal. **See Commonwealth v. Mastromarino**, 2 A.3d 581, 585 (Pa. Super. 2010). Instead, an appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test that determines:

> (1) whether appellant has filed a timely notice of appeal, **see** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, **see** Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a

---

[2] When a defendant enters a guilty plea, the defendant waives the right to "challenge on appeal all non-jurisdictional defects except the legality of [the] sentence and the validity of [the] plea." **Commonwealth v. Pantalion**, 957 A.2d 1267, 1271 (Pa. Super. 2008) (citation omitted). However, Newton retained the right to challenge the discretionary aspects of his sentence on appeal since the parties did not bargain for a specific sentence when negotiating the guilty plea. **See Commonwealth v. Heaster**, 171 A.3d 268, 271 (Pa. Super. 2017) (concluding that appellant could challenge the discretionary aspects of his sentence on appeal after entering a plea that negotiated a particular aspect of the sentence but did not include a sentencing agreement).

substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

***Commonwealth v. Griffin***, 65 A.3d 932, 935-36 (Pa. Super. 2013) (some citations omitted). Furthermore, our determination as to whether the appellant has raised a substantial question is limited to our review of the Rule 2119(f) statement. ***See*** Pa.R.A.P. 2119(f).

The record demonstrates that Newton filed a timely notice of appeal, preserved his sentencing claim in a post-sentence motion, and included in his brief a separate Rule 2119(f) statement. Accordingly, we will review the Rule 2119(f) statement to determine whether Newton has raised a substantial question for our review. Therein, Newton contends that: (1) the trial court imposed an excessive sentence "by giving inappropriate weight to factors already contemplated in the sentencing guidelines — such as the nature of the offense and [Newton's] juvenile history — to justify an aggravated range sentence;" and (2) "failed to appropriately weight mitigating factors and instead merely focused on the nature of the offense when justifying an aggravated range sentence."[3] Newton's Brief at 7.

We conclude that Newton has raised a substantial question that falls within the scope of appellate review. ***See Commonwealth v. Caldwell***, 117 A.3d 763, 770 (Pa. Super. 2015) (*en banc*) (holding that "an excessive

---

[3] Although Newton's brief does not specifically state which mitigating factors the trial court failed to consider, his post-sentence motion did list such purported factors. ***See*** Post-Sentence Motion, 7/3/24, at unnumbered 2 (averring that the trial court failed to consider: Newton's age at the time of the offense, various childhood difficulties, and the impact of the crime on Newton). Accordingly, we decline to find waiver of this issue.

sentence claim — in conjunction with an assertion that the court failed to consider mitigating factors — raises a substantial question"); *see also Commonwealth v. Lawrence*, 960 A.2d 473, 478 (Pa. Super. 2008) (reiterating that a claim that the defendant's prior record was double-factored raises a substantial question). We now turn to the merits of Newton's discretionary sentencing claim.

Our standard of review of a discretionary sentencing claim is well-settled:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In [the context of sentencing], an abuse of discretion is not shown merely by an error of judgment. Rather appellant must establish by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Clemat*, 218 A.3d 944, 959 (Pa. Super. 2019) (citation omitted).

"When reviewing sentencing matters, this Court must accord the sentencing court great weight as it is in the best position to view the defendant's character, displays of remorse, defiance or indifference, and the overall effect and nature of the crime." *Commonwealth v. Ventura*, 975 A.2d 1128, 1134 (Pa. Super. 2009). "We cannot re-weigh the sentencing factors and impose our judgment in the place of the sentencing court." *Commonwealth v. Macias*, 968 A.2d 773, 778 (Pa. Super. 2009).

Further, when a sentencing court has reviewed a PSI report, it is presumed that the court properly considered and weighed all relevant factors in fashioning the defendant's sentence, and that the sentencing court was aware of relevant information about the defendant's character and weighed those considerations alongside mitigating statutory factors. *See Commonwealth v. Baker*, 72 A.3d 652, 664 (Pa. Super. 2013).

Moreover, this Court has explained:

> Where an excessive sentence claim is based on deviation from the sentencing guidelines, we look for an indication that the sentencing court understood the suggested sentencing range. When there is such an indication, the sentencing court may deviate from the sentencing guidelines[:]
>
>> to fashion a sentence which takes into account the protection of the public, the rehabilitative needs of the defendant, and the gravity of the particular offenses as it relates to the impact on the life of the victim and the community, so long as the court also states of record the factual basis and specific reasons which compelled him to deviate from the guideline range.
>
> Thus, simply stated, the sentencing guidelines are merely advisory and the sentencing court may sentence a defendant outside the guidelines as long as the sentencing court places its reasons for doing so on the record.

*Commonwealth v. Tirado*, 870 A.2d 362, 366 (Pa. Super. 2005) (internal citations and quotation marks omitted); *see also* 42 Pa.C.S.A. § 9721(b). On review, this Court will vacate and remand a sentence if "the sentencing court sentenced outside the sentencing guidelines and the sentence is unreasonable." 42 Pa.C.S.A. § 9781(c)(3).

"Pennsylvania law affords the sentencing court discretion to impose its sentence concurrently or consecutively to other sentences being imposed at the same time or to sentences already imposed." ***Commonwealth v. Prisk***, 13 A.3d 526, 533 (Pa. Super. 2011) (internal quotations omitted). Consecutive sentences will not be disturbed on appeal unless "the aggregate sentence is `grossly disparate' to the defendant's conduct or `viscerally appear[s] as patently unreasonable.'" ***Commonwealth v. Brown***, 249 A.3d 1206, 1212 (Pa. Super. 2021). Additionally, the sentencing court is not bound by the sentencing guidelines, although it must consider the sentence ranges set forth in the sentencing guidelines. ***See Commonwealth v. Pisarchuk***, 306 A.3d 872, 880 (Pa. Super. 2023). "The court may deviate from the recommended guidelines; they are 'merely one factor among many that the court must consider in imposing a sentence.'" ***Id***.

Newton argues that the Court applied factors already contemplated in the sentencing guidelines to justify excessive, aggravated range, consecutive sentences. Specifically, he claims that the court improperly considered as aggravating factors the nature of the offense, the circumstances of the crime, the fact that Newton left the scene, the court's assumption that Newton disposed of the gun, and the fact that Newton was permitted to leave his house following the shooting. Newton further argues that the court should not have considered as an aggravating factor his prior firearm conviction, as the sentencing guidelines already contemplated that factor as well as his PRS.

In sum, Newton contends that the trial court focused on circumstances that were already considered in the standard range of the sentencing guidelines and misapplied those factors to justify its imposition of excessive, aggravated range, consecutive sentences.

During the sentencing hearing, the trial court stated that it had the benefit of a PSI report, which included the sentencing guidelines, and Newton's criminal, family, and treatment history.  *See* N.T., 7/1/24, at 2, 51, 58.  Furthermore, before imposing Newton's aggravated range sentences to run consecutively, the trial court "considered the testimony of the [decedent's] family, [Newton's] family and friends, and [Newton,] and the argument of counsel."  Trial Court Opinion, 7/22/24, at 8.  Here, at the conclusion of the sentencing hearing, the trial court aptly stated its reasoning and all the factors that it considered:

> It's very difficult to be a sentencing judge.  Any judge who enjoys the sentencing process should be in another profession because it is not — it's an incredible responsibility, but it's not something that anybody would find enjoyable.  The only thing you can do as a judge is to ensure that you're spending an adequate amount of time looking at the case and considering it, and [the court] can tell you that [the court has] been thinking about this case for months ever since [Newton] decided to plead guilty in this matter.  [The court] reviewed the [PSI] in great detail.  [The court has] woken up at night thinking about the case, looking at it from every single standpoint.  One of the most important things [the court thinks] as a judge that [the court has] to avoid is getting emotionally involved in the sentencing process, and the testimony from the victims was absolutely gut-wrenching both today and back in November when we had the decertification hearing.

From all accounts [the decedent] was an unbelievable phenomenal person. [The court] heard that from the victim's side. [The court heard] that from [Newton's] side, and [the court knows] that you will all live through this — live with this the rest of your lives. You just will, and there's nothing [the court] can say to you that's going to change that. [The court wishes] there were. If there were, [the court] would do it. On the other hand it's — there's a human reaction [the court thinks] to look at [Newton's] age at the time that this happened and to consider a mitigated factor on that sentence alone — or on that factor alone. Age is certainly a factor that has to be considered. It has to be balanced against other reasons, and so [the court has] to make [its] decision based on reason and calculation, and [the court has] to consider the Pennsylvania Sentencing Guidelines which were put there by the Pennsylvania Sentencing Commission, and [the court] put great weight on that because the Sentencing Commission provides that recommended treatment — or recommended sentence that [the court] almost always follow.

What you have to do as a judge is you have to look at the mitigating factors and the aggravating factors. [The court will] start with the mitigating factors. This isn't a mitigating factor, but the first thing [the court has] to consider is [that Newton] is pleading guilty to voluntary manslaughter not murder, and so that limits the options with regard to sentencing as it should because [Newton] has not been convicted of nor has he admitted to first-degree or third-degree murder so this is a voluntary manslaughter case, and [the court has] to consider it as such. Age. Age is absolutely an important factor in this case. We all know that as [Newton's counsel] stated the brain of a [sixteen]-year-old is not developed to the same extent as a [twenty-five]-year-old or a [thirty]-year-old, and we have to make some accommodation for that.

[The court] also took into account the difficult childhood that [Newton] had. He grew up in a family where both parents had significant criminal histories, and his father spent most of his life in jail. He experienced trauma seeing a godfather who served as a role model die of a drug overdose. [Newton] is an intelligent person, but that intelligence has never been developed. None of that excuses the actions that he took, but those are the mitigating factors that [the court took] into account.

- 10 -

There are a number of aggravating factors unfortunately. [The court looked] at the circumstances of the crime and the utter senselessness of it. [The court looked] at the actions that [Newton] took after this occurred, and [Newton] in that type of situation should have called the police. He should have remained where he was. Instead [Newton] fled the scene. He disposed of the gun. Those were actions that have to be thought about. Maybe not — maybe in the first [thirty] minutes or hour or two hours you're not thinking rationally, and you take those actions, but three weeks and disposing of the weapon?

[The court] just want[s] to mention the situation with [the decedent] being let out of the house, and that's just almost unfathomable to [the court], and that wasn't [Newton] as far as [the court] can see that was responsible for that, but that was something that never ever should have taken — something that never ever should have happened, and it was very difficult to see the video of that during the hearing that we had in November, but that wasn't [Newton's] doing, and [the court] can't hold that against him. [The court has] to look at [Newton's] action[s] in possessing a firearm after he had been adjudicated delinquent in the past for carrying a firearm without a license. Had you not carried a firearm without a license then this impulsive act that you committed would not have taken place. You knew you had been adjudicated delinquent of carrying a firearm. You did it anyway. [The court believes] you have remorse that [the decedent] is dead. [The court knows] you do, but if you had learned your lesson in this matter, this would never have occurred whether you felt impulsive or not. You might have gotten into a fistfight. You might have had words. [The court doesn't] know what would've happened, but you would have not had a gun, and he would be with us today.

Finally [the court has] to look at [Newton's] history prior to this event, and [the court hears Newton's] family, sister, brothers talk about the goodness that they saw in [him], and [the court doesn't] discount that. [The court doesn't] discount that that's there, and [doesn't] discount that that can't be developed at some point in the future, and [doesn't] question that [Newton's] relatives were being completely forthright in their understanding of [his]nature. However as [the Commonwealth] stated this case is — [Newton's] background is filled with violent episodes that took place with fights at school, possession of a weapon, numerous adjudications of delinquency, numerous attempts to

- 11 -

remedy that, none of which came to fruition. So [the court has] to take all of those aggravating circumstances into account, and the aggravating circumstances in [the court's] estimation outweigh the mitigating circumstances, and that's the reason for [the court's] sentence.

[Newton] will be spending a long period of time at the State Correctional Institute in this matter. [Newton, the court hopes] that you look at that as an opportunity for you. There are a number of programs that you can follow. You've already taken advantage of receiving your degree in the prison system. If you take advantage of the programs and you learn a new way of thinking for yourself then you can come out of here and be a productive person and live up to the potential that [the court] know[s] you have. If you get back in with the wrong group of people then there's a [twenty-five]-year period of supervision in this case, and you'll have a possibility of spending the rest of your life in jail.

It's very difficult as [the court] said to hear the relatives of [the decedent], and it's important. . . . [The court doesn't] know if there's any therapeutic value in that or not, and it's difficult for everybody here in the courtroom to hear that, but it's most important for you, [Newton]. You need to hear that, and you need to know what you put that family through, and [the court hopes] you never forget that, but [the court hopes] you take that as an opportunity to grow and to become a better person and to make that a part of you and to never let anything like this happen again.

N.T., 7/1/24, at 58-63.

Upon review, we determine that the trial court did not abuse its discretion or misapply the sentencing guidelines when imposing Newton's sentence. *See Clemat*, 218 A.3d at 959. Here, Newton's plea was open, and the parties did not agree on a sentence, allowing the trial court to impose any term up to the statutory maximum of twenty-five years. Based on the OGS and Newton's PRS, the sentencing guidelines provided a standard range sentence for voluntary manslaughter with a deadly weapon enhancement —

used of sixty to seventy-eight months, plus or minus twelve months for aggravating or mitigating circumstances; and RS to six months, plus or minus three months for possession of a firearm by a minor. **See** 204 Pa. Code §§ 303.16(a), 303.17(b). Therefore, Newton's aggregate sentence of eight to twenty-five years in a state correctional institution, which is the statutory maximum sentence, fell within the aggravated range of the sentencing guidelines.

The record demonstrates that the trial court had the benefit of a PSI report and stated its reasons for imposing Newton's aggravated range sentence during the sentencing hearing. **See Baker**, 72 A.3d at 664; **see also Prisk**, 13 A.3d at 533; **Tirado**, 870 A.2d at 366. Thus, Newton's consecutive sentence as aggregated is not `grossly disparate' to his conduct, nor does it 'viscerally appear as patently unreasonable.'" **Brown**, 249 A.3d at 1212. Accordingly, because Newton has not shown that the trial court abused its discretion, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

5/1/2025